**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **STEVEN ROSEMBERT** | : | |
| | : | **CIVIL ACTION** |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **NO.  13-2826** |
| | : | |
| **BOROUGH OF EAST LANSDOWNE, <u>et al.</u>,** | : | |
| | : | |
| **Defendants.** | : | |

**Goldberg, J.**                                                                                                    **April 9, 2014**

<u>**MEMORANDUM OPINION**</u>

       This case involves the alleged illegal search, arrest and incarceration of Plaintiff, Steven Rosembert.  Plaintiff alleges that numerous police officers unlawfully entered his home to perform an arrest, unnecessarily used a Taser gun, and maliciously prosecuted him because he is an African-American.  Plaintiff has also brought claims against the municipalities employing these officers pursuant to <u>Monell v. New York City Dept. of Social Services</u>, 436 U.S. 658 (1978).  Defendants have filed four motions to dismiss, as well as a motion to strike.  For the reasons that follow, Defendants' motions will be granted in part and denied in part.

**I.**        <u>**FACTUAL AND PROCEDURAL HISTORY**</u>[1]

       Plaintiff alleges that on the night of May 24, 2011, he was driving a motorcycle in the Borough of East Lansdowne.  (Am. Compl. ¶ 23.)  He acknowledges that at some point while operating his motorcycle, Defendant police officers McGrenera, Hartnett, Selimis, Albertoli, Burns and "Does 1-5" (collectively, "Defendant Officers") observed him violate the motor

---

[1] When deciding a motion to dismiss for failure to state a claim brought pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court must assume the veracity of all well-pleaded facts found in the complaint.  <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 679 (2009).  We assume that all facts found in the amended complaint are true.

vehicle code.  (Id. at ¶ 25.)  These officers attempted to pull over Plaintiff, and when Plaintiff did

not comply, a chase resulted.  (Id. at ¶¶ 23-24.)  In the course of fleeing from the police, Plaintiff

ran into his home, which the Officers entered without a warrant.  (Id. at ¶ 27.)

Plaintiff alleges that, once inside his home, the Defendant Officers used excessive force

to apprehend him, despite the fact that he did not offer any resistance.  (Id. at ¶¶ 30-31.)  Plaintiff

claims that all Defendant Officers repeatedly struck him on his face and upper body, that

Officers Burns and McGrenera excessively used Taser guns on him, and that Officer McGrenera

"pistol whipped" him in the face with a Taser.  (Id. at ¶¶ 33-36.)  Plaintiff asserts that he suffered

serious bodily injury and long-term pain and suffering from the attack.  (Id.)

Plaintiff claims that Officer McGrenera then unlawfully arrested him and wrongfully

charged him with numerous crimes related to this incident.  (Id. at ¶ 37.)  Plaintiff ultimately

negotiated a plea agreement, wherein he pleaded guilty to driving under the influence and fleeing

or attempting to elude police, and, in return, the other twenty-eight charges against him were

dismissed.[2]  (Defs. McGrenera & Hartnett's Mot. to Dismiss, Doc. No. 29, Exs. B-D.)[3]

Plaintiff alleges that Defendants, Borough of Lansdowne, Borough of East Lansdowne

and Borough of Yeadon (collectively, "Defendant Boroughs") have an agreement that their

---

[2]  The other charges brought against Plaintiff, which were dismissed pursuant to the plea
agreement, include aggravated assault, resisting arrest, careless driving, reckless driving, failing
to stop at a stop sign, failure to yield at a yield sign, improper use of a learner's permit, failure to
wear proper headgear on a motorcycle, failure to wear an eye protection device, operating a
vehicle without insurance, driving an unregistered vehicle, operating a vehicle without valid
inspection, disorderly conduct, and driving with a suspended license.  (Defs. McGrenera &
Hartnett's Mot. to Dismiss, Ex. D.)

[3]  Exhibits B through D are public records and transcripts from Plaintiff's criminal case in the
Delaware County Court of Common Pleas.  A court may properly consider public records when
deciding a 12(b)(6) motion to dismiss, including those derived from judicial proceedings.  S.
Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp. Ltd., 181 F.3d 410, 426 (3d Cir.
1999).

police officers may assist officers from neighboring boroughs in their respective police functions.[4]  (Am. Compl. ¶ 20.)  According to Plaintiff, these Boroughs were on notice that the Defendant Officers have a history of violating African-American citizens' constitutional rights, but have chosen to ignore these unconstitutional actions, and have failed to implement training or discipline to correct the issue.  (Id. at ¶¶ 21-22.)  Plaintiff alleges he has witnessed violent beatings of African-Americans by police officers employed by these Boroughs, and that the Defendant Boroughs have an unlawful custom, policy and practice of maliciously arresting African-American citizens. (Id. at ¶¶ 54-55.)  Plaintiff asserts that his injuries are a direct result of these policies and/or customs.  (Id. at ¶ 63.)

On June 10, 2013, Plaintiff brought suit against the Defendant Officers in both their individual and official capacities,[5] as well as the  Defendant Boroughs, for violations of  his

---

[4] The named Defendant Officers work for the following municipalities: (1) Officers McGrenera and Hartnett are employed by the Borough of East Lansdowne; (2) Officers Selemis and Albertoli are employed by the Borough of Lansdowne; and (3) Officer Burns is employed by the Borough of Yeadon.  (Am. Compl. ¶¶ 10-16.)

[5] All claims against the Defendant Officers were brought in their official, as well as their individual capacities.  Defendants have argued that all official capacity claims against these Officers should be dismissed because they are duplicative of Plaintiff's Monell claims.  "The Supreme Court has stated that a suit under section 1983 against a municipal officer in his or her official capacity is, in actuality, a suit against the municipality that the officer represents; an official capacity suit is essentially treated as a suit against the entity itself." DeBellis v. Kulp, 166 F. Supp. 2d 255, 264-65 (E.D. Pa. 2001) (citing Kentucky v. Graham, 473 U.S. 159, 166 (1985)); see also Satterfield v. Borough of Schuylkill Haven, 12 F. Supp. 2d 423, 432 (E.D. Pa. 1998) (dismissing claims against defendants in their official capacities where municipality was also a named defendant).  Therefore, all claims against the Defendant Officers in their official capacities will be dismissed as duplicative where the same claim has also been brought against the Defendant Boroughs.

constitutional rights.  The claims brought are as follows:

(1) violation of the Fourth and Fourteenth Amendment pursuant to 42 U.S.C. § 1983 against all Defendants ("Count I");
(2) a Monell claim against the Borough Defendants ("Count II");
(3) a Monell claim for failure to train, supervise and discipline against the Borough Defendants ("Count III");
(4) denial of due process pursuant to section 1983 against the Defendant Officers ("Count IV");
(5) assault and battery against Officers McGrenera and Burns ("Count V");
(6) malicious prosecution against all Defendants ("Count VI");
(7) intentional infliction of emotional distress against all Defendants ("Count VII");
(8) fraud against Defendant McGrenera ("Count VIII");
(9) retaliation against all Defendants ("Count IX"); and
(10) conspiracy under the color of state law pursuant to sections 1983, 1985 and 1986 against all Defendants ("Count X").

Defendant seeks monetary compensation, as well as a declaratory judgment that all Defendants' actions recited in the amended complaint are unconstitutional, and injunctive relief to prevent Defendants from violating his constitutional rights in the future.

Defendants have filed four motions to dismiss, as well as a motion to strike in response to the amended complaint.  These motions are now fully briefed and ready for disposition.

## II.   LEGAL ANALYSIS

### A.  Motions to Dismiss[6]

#### 1.  Standard of Review

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'"  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atlantic

---

[6] Plaintiff complains in his responses to Defendants' motions that Defendants did not seek leave of Court to file a motion to dismiss, and that a motion to dismiss is not a proper pleading. However, it is axiomatic that a defendant may file a motion to dismiss without seeking leave of court prior to filing an answer under Federal Rule of Civil Procedure 12(b)(6), and that a defendant need not file a responsive pleading until after the court rules upon a Rule 12(b) motion. FED. R. CIV. P. 12(a)(4), 12(b).

Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  The plausibility standard requires more than a "sheer possibility that a defendant has acted unlawfully."  Id.  To determine the sufficiency of a complaint under Twombly and Iqbal, the Court must take the following three steps: (1) the Court must "tak[e] note of the elements a plaintiff must plead to state a claim;" (2) the court should identify the allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth;" and (3) "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."  Burch v. Milberg Factors, Inc., 662 F.3d 212, 221 (3d Cir. 2011) (citations omitted).

2.   Count I – Fourth Amendment Claims[7]

In his amended complaint, Plaintiff lists several grounds for his Fourth Amendment claim, including unlawful search, false arrest, false imprisonment and excessive force.  (Am. Compl. ¶¶ 76-83.)  Defendants argue that all Fourth Amendment claims should be dismissed, other than the claims for excessive force against the Defendant Officers.  Essentially, Defendants assert that the claims for unreasonable search and seizure are not cognizable under Heck v. Humphrey, 512 U.S. 477 (1994), in light of Plaintiff's guilty plea; and in any event, they argue his guilty plea establishes the existence of probable cause for his arrest, any search associated with his arrest, and his imprisonment.  Further, Defendants posit that the claims against the Defendant Boroughs fail to state a claim under the requirements of Monell v. New York City Dept. of Social Services, 436 U.S. 658 (1978).  We address each of these arguments in turn.

---

[7] Count I of the amended complaint asserts claims for violations of both the Fourth and Fourteenth Amendments.  Plaintiff's Fourteenth Amendment due process claims in Count I will be dismissed because they are based upon the same violations as the Fourth Amendment claim. "The Fourth Amendment—the more specific form of relief—is the proper vehicle for th[ese] claim[s]."  Geist v. Ammary, 2012 WL 6762010, at *2 n.9 (E.D. Pa. Dec. 20, 2012) (citing Quales v. Borough of Honesdale, 2011 WL 3020904, at *5 (M.D. Pa. July 22, 2011)).

*a. Fourth Amendment Claims Against Defendant Officers*

In Heck v. Humphrey, 512 U.S. 477 (1994), the Supreme Court considered whether a person convicted of a crime may recover damages related to his conviction under 42 U.S.C. § 1983. The Court held that "in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus[.]" Id. at 486-87. The main question to be addressed in this analysis is whether Plaintiff's claims "necessarily imply the invalidity of [Plaintiff's] conviction." Id. at 487.

The United States Court of Appeals for the Third Circuit has determined that a guilty plea is sufficient to bar a subsequent section 1983 claim under Heck. Gilles v. Davis, 427 F.3d 197, 209 n.8 (3d Cir. 2005). However, Heck does not bar a claim where a plaintiff seeks damages for the defendant's use of improper procedures, so long as the validity of a plaintiff's conviction is not called into question. McBride v. Cahoone, 820 F. Supp. 2d 623, 632 (E.D. Pa. 2011). A claim for excessive force generally does not call a conviction into question, and Defendants do not challenge Plaintiff's ability to bring this claim against the Defendant Officers. See Nelson v. Jashurek, 109 F.3d 142, 145-46 (3d Cir. 1997) (finding that Heck did not bar an excessive force claim where the plaintiff had been convicted of resisting arrest). Therefore, Plaintiff's excessive force claim will survive.

However, we find that Plaintiff's claims for illegal search and false arrest are Heck-barred. Plaintiff asserts that the Defendant Officers entered his home without a valid warrant and

illegally arrested and detained him in violation of the Fourth Amendment.   The amended complaint notes that Defendants were not aware that Plaintiff's blood alcohol level was elevated until a chemical test was completed twenty-one days later.  (Am. Compl. ¶ 32.)  This blood test was only able to be conducted as a result of the police entering Plaintiff's house to make the arrest, and therefore, a finding that the search and/or arrest was unlawful would likely result in the exclusion of this evidence.  See Mosby v. O'Brie, 532 Fed. Appx. 84, 86 (3d Cir. 2013) (concluding Heck barred a Fourth Amendment claim where an arrest made without probable cause would have resulted in the evidence obtained from the arrest being suppressed in a criminal trial).  As Plaintiff pleaded guilty to driving under the influence of alcohol, a finding that he was searched or arrested without probable cause, which would likely result in the suppression of his blood alcohol level, would necessarily imply the invalidity of his conviction. Therefore, as Plaintiff has not argued that his conviction has been vacated or otherwise invalidated, we agree with Defendants that Plaintiff's claims for unlawful search and false arrest are barred by Heck.[8]

In any event, we also agree with Defendants that probable cause existed for Plaintiff's arrest, and by extension, his imprisonment.  To maintain a claim for false arrest, a plaintiff must demonstrate that the officers conducting the arrest lacked probable cause.  Wright v. City of Philadelphia, 409 F.3d 595, 601 (3d Cir. 2005).  "[P]robable cause for a § 1983 unlawful arrest claim is [ ] established by guilty plea or conviction, although not where the conviction is later overturned."  Ehly v. City of Philadelphia, 2004 WL 2583818, at *3 (E.D. Pa. Nov. 9, 2004)

---

[8] Because a necessary element of a false imprisonment claim is the occurrence of a false arrest, Plaintiff's false imprisonment claim will also be dismissed.  See Bryant v. City of Philadelphia, 2012 WL 258399, at *5 n.8 (E.D. Pa. Jan. 27, 2012) (entering summary judgment on the plaintiff's false imprisonment claim because his false arrest claim was found to be barred by Heck).

(citations omitted).   Police only need probable cause to exist for one offense that could be charged under the circumstance.   Barna v. City of Perth Amboy, 42 F.3d 809, 819 (3d Cir. 1994) (citing Edwards v. City of Philadelphia, 860 F.2d 568, 575-76 (3d Cir. 1988)).

Plaintiff acknowledges in his amended complaint that the Defendant Officers witnessed him violate the motor vehicle code.   (Am. Compl. ¶ 25.)   He also acknowledges that when the Defendant Officers attempted to pull him over, he fled, resulting in a chase.   (Id. at ¶¶ 23-24.) Plaintiff pleaded guilty to fleeing or attempting to elude police and driving under the influence. (Defs. McGrenera & Hartnett's Mot. to Dismiss, Ex. D.)   These facts, acknowledged by Plaintiff, combined with his subsequent guilty plea, are sufficient to establish probable cause for his arrest.[9]

With regard to Plaintiff's argument that the Defendant Officers unlawfully entered his home without a warrant in violation of his Fourth Amendment rights, we find that the doctrine of "hot pursuit" applies on the face of the amended complaint.   In United States v. Santana, 427 U.S. 38 (1976) the United States Supreme Court held that "a suspect may not defeat an arrest which has been set in motion in a public place, and is therefore proper under [United States v. Watson],[10] by the expedient of escaping to a private place."   Id. at 43.   As already discussed, Defendants had probable cause to arrest Plaintiff when they saw him violate the motor vehicle code and when he began fleeing after being directed to pull over.   The police undoubtedly had

---

[9] A person is guilty of fleeing or attempting to elude a police officer where he "willfully fails or refuses to bring his vehicle to a stop, or who otherwise flees or attempts to elude a pursuing police officer, when given a visual and audible signal to bring the vehicle to a stop."   75 PA. CONS. STAT. ANN. § 3733(a).   Fleeing and attempting to elude a police officer becomes a third degree felony where the driver also commits a violation of section 3802, for driving under the influence of drugs or alcohol. Id. at § 3733(a.2)(2)(i).

[10] In United States v. Watson, 423 U.S. 411 (1976), the Supreme Court held that a warrantless arrest in a public place did not violate the Fourth Amendment, so long as probable cause existed at the time of the arrest.

the authority to conduct an arrest while Plaintiff was in public, operating his motor vehicle. Plaintiff acknowledges that he fled into his house, and the police followed shortly thereafter to conduct an arrest.  Therefore, we find that the doctrine of hot pursuit applies, and the entry into Plaintiff's home does not constitute an unlawful search.[11]

### b.   Fourth Amendment Claims Against the Defendant Boroughs

A municipality may be held liable for its employee's violation of a citizen's constitutional rights under section 1983, although not on a respondeat superior theory of liability. Monell v. New York City Dept. of Soc. Servs., 436 U.S. 658, 690-92 (1978).  To prevail on a Monell claim, a plaintiff must show a policy[12] or custom[13] created by a policymaker that caused the alleged constitutional violation.  Natale v. Camden Cnty. Corr. Facility, 318 F.3d 575, 583-84 (3d Cir. 2003) (citing Bd. of the Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown, 520 U.S. 397, 404 (1997)).  To establish causation, "there must be an affirmative link between the policy and the particular constitutional violation alleged."  City of Okl. City v. Tuttle, 471 U.S. 808, 823 (1985).

There are three circumstances under which a municipality may be held liable under Monell: (1) where the "appropriate officer or entity promulgates a generally applicable statement

---

[11] To the extent that Plaintiff sought to make a claim for unlawful search of his person, we find that such a claim must also be dismissed, as it was incident to what we have determined to be a lawful arrest.  See Arizona v. Gant, 556 U.S. 332, 338 (2009) ("Among the exceptions to the warrant requirement is a search incident to a lawful arrest.").

[12] A "[p]olicy is made when a 'decisionmaker possess[ing] final authority to establish municipal policy with respect to the action' issues an official proclamation, policy, or edict."  Andrews v. City of Philadelphia, 895 F.2d 1469, 1480 (3d Cir. 1990) (quoting Pembaur v. City of Cincinnati, 475 U.S. 469, 481 (1986)).

[13] "A custom is an act 'that has not been formally approved by an appropriate decisionmaker,' but that is 'so widespread as to have the force of law.'"  Natale v. Camden Cnty. Corr. Facility, 318 F.3d 575, 584 (3d Cir. 2003) (quoting Bd. of the Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown, 520 U.S. 397, 417 (1997)).

of policy and the subsequent act complained of is simply an implementation of that policy"; (2) "where no rule has been announced as policy but federal law has been violated by an act of the policymaker itself"; and (3) "where the policymaker has failed to act affirmatively at all, [though] the need to take some action to control the agents of the government is so obvious, and the inadequacy of existing practice is so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need." Natale, 318 F.3d at 584 (quoting Bd. of the Cnty. Comm'rs of Bryan Cnty, Okl. v. Brown, 520 U.S. 397, 417-18 (1997) (Souter, J., dissenting)).

Defendants argue that Plaintiff's amended complaint does not allege sufficient facts to state a claim for Monell liability. We disagree with respect to the claim for excessive use of force. The amended complaint states that there is a custom and/or policy of "unlawfully beating African-American suspects who flee Borough police officers and are caught in retaliation for fleeing," and that the Defendant Officers were acting pursuant to this policy or custom. (Am. Compl. ¶ 33.) The amended complaint further states that some of the Defendant Officers involved in the arrest were supervisory officers or shift commanders who may be considered policymakers under Monell. (Id. at ¶ 40.) Finally, Plaintiff asserts that he has previously "witnessed the brutal and violent beatings of African-American[s]" by police officers from these Defendant Boroughs. (Id. at ¶ 54.)

The facts alleged by Plaintiff at the pleading stage are sufficient to satisfy either the second or third category of Monell liability noted in Natale. Viewing the facts alleged in the amended complaint in the light most favorable to Plaintiff, supervisory officers were directly involved in using an excessive amount of force in arresting Plaintiff. Particularly in light of the alleged history of officer attacks on African-American individuals, these facts are sufficient to

establish a policy and/or custom for Monell liability.   Additionally, the alleged direct involvement of policymakers in the attack would satisfy the causation element.   Therefore, Defendants' motions will be denied with respect to the Monell claims for excessive use of force.[14]

### 3.   Count III – Monell Claim for Failure to Train, Supervise and Discipline

The Third Circuit has held that "a failure to train, discipline or control can only form the basis for section 1983 municipal liability if the plaintiff can show both contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents and circumstances under which the supervisor's actions or inaction could be found to have communicated a message of approval to the offending subordinate." Montgomery v. De Simone, 159 F.3d 120, 127 (3d Cir. 1998) (citing Bonenberger v. Plymouth Twp., 132 F.3d 20, 25 (3d Cir. 1997)).

In light of the facts asserted in the amended complaint, that supervisory officers were present during the alleged beating of Plaintiff and that previous African-Americans have been targeted in a similar manner by police officers from these Boroughs, Plaintiff has sufficiently stated a claim for failure to train, discipline or control.   These facts demonstrate that supervisors were present and aware of the excessive force used in Plaintiff's arrest, and by either engaging in the behavior or silently acquiescing to the conduct, they communicated a message of approval. Therefore, Defendants' motions will be denied as to Count III.

### 4.   Count IV – Denial of Due Process

The factual basis for Plaintiff's due process claim seems to be that "[a]t the time [Plaintiff] was brutally and violently beaten and tased by Defendants . . . he had not been

---

[14] The Monell claims asserted against the Defendant Boroughs in Count I and those brought in Count II appear to be identical.   Therefore, Count II will be dismissed as duplicative.

convicted of any of the crimes he was subsequently charged with in the underlying case."  (Am. Compl. ¶ 93.)  It appears, therefore, that Count IV asserts an additional claim for excessive use of force.  As previously noted, Plaintiff's excessive use of force claim is governed by the Fourth Amendment.  Therefore, "the more generalized notion of 'substantive due process' under the Fourteenth Amendment does not apply."  Verdier v. Darby Borough, 796 F. Supp. 2d 606, 619 (E.D. Pa. 2011) (quoting Albright v. Oliver, 510 U.S. 266, 273 (1994)).  While Plaintiff cites Phillips v. County of Allegheny, 515 F.3d 224 (3d Cir. 2008), for the proposition that this claim may be brought under the due process clause of the Fourteenth Amendment, Phillips dealt with a claim under the state-created danger doctrine.  Plaintiff has not asserted a state-created danger claim.  Accordingly, Count IV of the amended complaint will be dismissed.

### 5.   Count V – Assault and Battery

Plaintiff has brought claims for assault and battery against Officers McGrenera and Burns, the officers specifically accused of tasing and pistol-whipping Plaintiff.  This claim has been brought against these officers in their official and individual capacities.

Under Pennsylvania law, an assault is "an intentional attempt by force to do injury to the person of another and a battery is committed whenever the violence menaced in an assault is actually done, though in ever so small a degree, upon the person.  A police officer may use reasonable force to prevent interference with the exercise of his authority or the performance of his duty."  Renk v. City of Pittsburgh, 641 A.2d 289, 293 (Pa. 1994).

Defendants do not challenge Plaintiff's ability to state a claim for assault and battery against Officers McGrenera and Burns in their individual capacities.[15]  However, they argue that

---

[15]  The Pennsylvania Political Subdivision Tort Claims Act provides that where a local government's employee engages in willful misconduct, the provisions of the Act extending immunity to local government officials shall not apply.  42 PA. CONS. STAT. ANN. § 8550.

the claims against these officers in their official capacities must be dismissed due to the immunity extended under the Pennsylvania Political Subdivision Tort Claims Act, 42 PA. CONS. STAT. ANN. § 8541, et seq.

The Tort Claims Act provides that local governmental agencies are immune from suit for the intentional torts committed by its employees.  Lazarde v. City of Reading, 2012 WL 4473246, at *6 (E.D. Pa. Sept. 28, 2012); see also 42 PA. CONS. STAT. ANN. § 8542 (listing eight exceptions to local government immunity, all of which involve negligent acts).  As previously noted, a claim against a local official brought against him in his official capacity is essentially a claim against the municipality itself.  DeBellis v. Kulp, 166 F. Supp. 2d 255, 264-65 (E.D. Pa. 2001) (citing Kentucky v. Graham, 473 U.S. 159, 166 (1985)).  Because the Tort Claims Act extends immunity to a municipality for intentional torts, the claim for assault and battery against Officers McGrenera and Burns in their official capacities will be dismissed.

### 6.   Count VI – Malicious Prosecution[16]

A common law claim for malicious prosecution requires the plaintiff to demonstrate that the defendant "(1) instituted proceedings against the plaintiff, (2) without probable cause, (3) with malice, and (4) that the proceedings were terminated in [the plaintiff's] favor."  Wilson v. Dewees, 2013 WL 3432047, at *4 (E.D. Pa. July 8, 2013).  "A malicious prosecution claim cannot be predicated on an underlying criminal proceeding which terminated in a manner not

---

Willful misconduct in the Tort Claims Act is "synonymous with the term 'intentional tort.'"  Sanford v. Stiles, 456 F.3d 298, 315 (3d Cir. 2006).

[16] In the amended complaint, Plaintiff's malicious prosecution claim is identified as a "state law claim[.]"  However, in Plaintiff's responses to the motions to dismiss, Plaintiff refers to an element that is only found in a malicious prosecution claim brought under section 1983—that the plaintiff suffered a deprivation of liberty, or seizure, due to the legal proceeding.  (Pl.'s Resp. to McGrenera & Hartnett Mot. to Dismiss, Doc. No. 32, pp. 35-36); see also Kossler v. Crisanti, 564 F.3d 181, 186 (3d Cir. 2009).  Because the amended complaint only asserts a state law claim, and because our findings with regard to the state law claim would apply equally to a federal malicious prosecution claim, we will limit our analysis to state law.

indicative of the innocence of the accused." Kossler v. Crisanti, 564 F.3d 181, 187 (3d Cir. 2009).   A plaintiff can establish that the proceedings terminated in his favor by demonstrating: (1) a discharge by a magistrate at a preliminary hearing; (2) a grand jury's refusal to indict; (3) formal abandonment of proceedings by a prosecutor; (4) the quashing of an indictment or information; (5) an acquittal; or (6) a final order in favor of the accused by a trial or appellate court.  Id.

Plaintiff pleaded guilty to driving under the influence of alcohol and fleeing or attempting to elude police.  The remaining charges against him were dismissed pursuant to a negotiated plea agreement.  (Defs. McGrenera & Hartnett Mot. to Dismiss, Exs. B-D.)  Plaintiff does not dispute that the charges were dismissed pursuant to a plea agreement, but instead simply argues that the dismissal of these claims constitutes a favorable termination, as required to sustain an action for malicious prosecution.  We disagree.

"That the dismissal of those charges resulted from [Plaintiff's] plea agreement with the prosecution, and not his innocence, means that he cannot establish a favorable termination" for a malicious prosecution claim.  White v. Brown, 408 Fed. Appx. 595, 599 (3d Cir. 2010); see also Marable v. West Pottsgrove Twp., 176 Fed. Appx. 275, 281 n.1 (3d Cir. 2006) (citing Hilfirty v. Shipman, 91 F.3d 573, 580 (3d Cir. 1996)) ("A prosecutor's decision to drop charges as part of a compromise with the accused does not amount to a 'favorable termination[.]'").  Furthermore, a finding that Plaintiff was maliciously prosecuted would necessarily imply the invalidity of his conviction, which is prohibited by the Supreme Court's ruling in Heck.  Marable, 176 Fed. Appx. at 281; Heck, 512 U.S. at 486-87.  Therefore, Plaintiff's malicious prosecution claims will be dismissed.

7.  <u>Count VII – Intentional Infliction of Emotional Distress ("IIED")</u>

As we addressed above, the Defendant Boroughs are entitled to immunity under the Tort Claims Act for all intentional torts.  Therefore, the IIED claims against the Defendant Boroughs will be dismissed.

With respect to the Defendant Officers, Officers McGrenera and Hartnett assert that Plaintiff's IIED claim should be dismissed without prejudice with leave to amend because the claim is based upon an unlawful stop and search and Plaintiff does not assert that he suffered a physical injury.

Under Pennsylvania law, a claim for intentional infliction of emotional distress requires a plaintiff to establish the following elements: "(1) the conduct must be extreme or outrageous; (2) the conduct must be intentional or reckless; (3) it must cause emotional distress; and (4) the distress must be severe."  <u>Chuy v. Philadelphia Eagles Football Club</u>, 595 F.2d 1265, 1273 (3d Cir. 1979).  Extreme and outrageous conduct is defined as "conduct so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society."  <u>Atkinson v. City of Philadelphia</u>, 2000 WL 793193, at *6 (E.D. Pa. June 20, 2000) (quotation marks and citations omitted).  Pennsylvania courts also require a plaintiff asserting a claim for intentional infliction of emotional distress to provide evidence of a physical injury caused by the defendant's conduct.  <u>Hart v. O'Malley</u>, 647 A.2d 542, 554 (Pa. Super. 1994).

While the amended complaint does not specifically list the grounds for IIED, Count VII does incorporate all facts stated earlier in the complaint.  The allegations involving the excessive use of force are certainly extreme and outrageous and involve intentional conduct, as required to state a claim for intentional infliction of emotional distress.  Additionally, the amended

complaint states that his psychological injuries as a result of this incident have "manifested themselves physically in the form of financial loss, sleep deprivation, reoccurring nightmares and other physically disabling manifestations."  (Am. Compl. ¶ 111.)  These allegations are sufficient to state a claim for IIED.  Therefore, Officers McGrenera and Hartnett's motion to dismiss will be denied as to Count VII.

### 8.   Count VIII – Fraud[17]

Plaintiff has also brought a claim against Officer McGrenera for fraud, alleging that he "intentionally, maliciously and recklessly repeatedly lied and otherwise made materially false and fraudulent statements . . . solely for the purpose of inducing prosecutors to wrongfully bring charges, inducing a judge to wrongfully hold [Plaintiff] for court and to induce a judge or jury to wrongfully convict [Plaintiff] in deliberate indifference to his constitutional rights."   (Am. Compl. ¶ 114.)   Officer McGrenera argues that this claim is essentially a restatement of the malicious prosecution claim, and therefore should be dismissed pursuant to Heck.  We agree.  A finding that the charges brought against Plaintiff were based upon fraud would necessarily call the propriety of his guilty plea and conviction into question, and is therefore Heck-barred.  See Platts v. Buchanan, 2013 WL 4810486, at *6-7 (W.D. Pa. Sept. 9, 2013) (dismissing a claim pursuant to Heck where the plaintiff asserted that prosecutors obtained his conviction by fraud). Accordingly, Count VIII of the complaint will be dismissed.

### 9.   Count IX – Retaliation

In Count IX, Plaintiff asserts a claim for retaliation, stating that the Defendant Officers beat and tased Plaintiff in retaliation for fleeing.  Defendants argue that there is no separate tort of retaliation in Pennsylvania.   Plaintiff responds that, despite the fact that the amended

---

[17] As fraud is an intentional tort, the claim against Officer McGrenera in his official capacity will be dismissed due to the immunity extended to the municipality by the Tort Claims Act.

complaint lists retaliation as a state law claim, he intended to bring his retaliation claim under section 1983.  Neither cause of action is successful.

The Court is unaware of, and Plaintiff has not cited to, any case recognizing a common law claim for retaliation in Pennsylvania.  Additionally, the cases cited by Plaintiff in support of his retaliation claim concern employment discrimination and First Amendment freedom of speech issues, neither of which are at issue in this case.  See Gomez-Perez v. Potter, 553 U.S. 474 (2008) (analyzing a retaliation claim under the Age Discrimination in Employment Act); Mitchell v. Miller, 884 F. Supp. 2d 334, 356-59 (W.D. Pa. 2012) (concerning a retaliation claim brought by a public employee who argued that her employment had been terminated for exercising First Amendment rights).  Accordingly, Count IX of the amended complaint will be dismissed.

10. Count X – Conspiracy

In Count X, Plaintiff appears to assert claims for conspiracy under sections 1983, 1985 and 1986.[18]

In order to state a claim for conspiracy under section 1983, "a plaintiff must establish (1) the existence of a conspiracy involving state action; and (2) a deprivation of civil rights in

---

[18] Defendant Borough of East Lansdowne argued in its motion that a claim for conspiracy against a municipality could not stand due to the intracorporate conspiracy doctrine discussed in Scott v. Twp. of Bristol, 1990 WL 178556, at *6 (E.D. Pa. Nov. 14, 1990).  The intracorporate conspiracy doctrine states that a corporation cannot conspire with itself, and so an action for conspiracy cannot stand where a corporation is alleged to have conspired with its employees in their official capacity.  Id. at *6-7.  However, the officers in this case have been sued in their individual capacities and the municipalities are also alleged to have conspired with one another. The intracorporate conspiracy doctrine does not foreclose a plaintiff from establishing a conspiracy claim under section 1985 where "the officer is acting in a personal, as opposed to official, capacity, or if independent third parties are alleged to have joined the conspiracy." Robison v. Canterbury Village, Inc., 848 F.2d 424, 431 (3d Cir. 1988); see also Suber v. Guinta, 902 F. Supp. 2d 591, 608-09 (E.D. Pa. 2012) (noting that a section 1985 claim is viable where a municipality is alleged to have conspired with municipal employees in their individual capacity).

furtherance of the conspiracy by a party to the conspiracy."  Gale v. Storti, 608 F. Supp. 2d 629,

635 (E.D. Pa. 2009) (quoting Pfannstiel v. City of Marion, 918 F.2d 1178, 1187 (5th Cir. 1990)

(abrogated on other grounds)).  A plaintiff must allege that there was an agreement or meeting of

the minds to violate his constitutional rights.  Id. (citing Startzell v. City of Philadelphia, 533

F.3d 183, 205 (3d Cir. 2008)).

"[I]n order to state a claim under section 1985(3),[19] a plaintiff must allege: (1) a

conspiracy; (2) motivated by a racial or class based discriminatory animus designed to deprive,

directly or indirectly, any person or class of persons to the equal protection of the laws; (3) an act

in furtherance of the conspiracy; and (4) an injury to person or property or the deprivation of any

right or privilege of a citizen of the United States."  Lake v. Arnold, 112 F.3d 682, 685 (3d Cir.

1997) (citing Griffin v. Breckenridge, 403 U.S. 88, 102-03 (1971)).

Section 1986 provides an additional cause of action for those able to state a claim under

section 1985.  Section 1986[20] provides a cause of action against persons who are aware of a

section 1985 conspiracy, but fail to intervene.  In order to state a claim under section 1986, a

plaintiff must allege that: "(1) the defendant had actual knowledge of a section 1985 conspiracy,

(2) the defendant had the power to prevent or aid in preventing the commission of a § 1985

violation, (3) the defendant neglected or refused to prevent a § 1985 conspiracy, and (4) a

wrongful act was committed."  Clark v. Clabaugh, 20 F.3d 1290, 1295 (3d Cir. 1994).  "[T]he

---

[19] 42 U.S.C. § 1985(3) states: "If two or more persons in any State or Territory conspire . . . for
the purpose of depriving, either directly or indirectly, any person or class of persons of the equal
protection of the laws, or of equal privileges and immunities under the laws . . . the party so
injured or deprived may have an action for the recovery of damages occasioned by such injury or
deprivation, against any one or more of the conspirators."

[20] 42 U.S.C. § 1986 states: "Every person who, having knowledge that any of the wrongs
conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and
having the power to prevent or aid in preventing the commission of the same, neglects or refuses
so to do, if such wrongful acts be committed, shall be liable to the party injured[.]"

success of a section 1986 claim is contingent upon the existence of a viable section 1985 claim." <u>Murphy v. Yates</u>, 2005 WL 2989630, at *2 n.2 (E.D. Pa. Aug. 8, 2005) (quoting <u>Moyer v. Borough of North Wales</u>, 2000 WL 875704, at *4 (E.D. Pa. June 22, 2000)).

We find that Plaintiff has not pled his conspiracy claims with sufficient specificity to survive a motion to dismiss.  "To withstand a motion to dismiss, a complaint alleging a civil rights conspiracy should identify with particularity the conduct violating plaintiffs' rights, the time and place of these actions, and the people responsible therefor."  <u>DeJohn v. Temple University</u>, 2006 WL 2623274, at *5 (E.D. Pa. Sept. 11, 2006) (quoting <u>Boddorff v. Publicker Indus., Inc.</u>, 488 F. Supp. 1107, 1112 (E.D. Pa. 1980)).  Specific allegations of an agreement to carry out the alleged chain of events is essential in stating a claim for conspiracy.  <u>Spencer v. Steinman</u>, 968 F. Supp. 1011, 1020 (E.D. Pa. 1997).  "It is not enough that the end result of the parties' independent conduct caused plaintiff harm or even that the alleged perpetrators of the harm acted in conscious parallelism."  <u>Id.</u>

While Plaintiff does specifically refer to an unlawful agreement entered into by the Defendant Officers with regard to his allegedly malicious prosecution, we have already determined that Plaintiff's claims for false arrest, unlawful search and malicious prosecution are non-cognizable under <u>Heck</u>.  Therefore, any conspiracy to violate Plaintiff's civil rights must stem from his Fourth Amendment excessive force claim.

With regard to the use of force, Plaintiff has largely made boilerplate assertions that the Boroughs have a "well-documented history of exonerating officers for using excessive and violent force"; and the Defendant Boroughs had knowledge that their "police officers would unlawfully agree to act in concert with and conspire with fellow police officers <u>like</u> Defendants McGrenera, Hartnett, Selimis, Burns and Does 1-5 to cover-up . . . Defendant McGrenera's

violent beatings of other innocent African-American men."  (Am. Compl. ¶¶ 56, 68 (emphasis added).)  These allegations do not provide sufficient facts to allow this Court to plausibly determine that these specific Defendants formally agreed to violate this Plaintiff's constitutional rights.  A lack of agreement is fatal to the conspiracy claims under section 1983 and section 1985, which, in turn, prevents Plaintiff from establishing a claim under section 1986. Accordingly, Count X of the amended complaint will be dismissed.

### B.  Standing – Case or Controversy under Article III

Defendants also move to dismiss Plaintiff's requests for declaratory judgment and injunctive relief for failure to meet Article III's case or controversy requirement.  Defendants argue that Plaintiff has not pled facts to demonstrate that his alleged injury is likely to be repeated.  The amended complaint seeks "[d]eclaratory [r]elief declaring that all Defendants' actions stated herein are unconstitutional" and "[i]njunctive [r]elief barring all Defendants from violating [Plaintiff's] constitutional rights in the future by engaging in the unconstitutional actions stated herein."  (Am. Compl. ¶¶ 123-24.)

Standing under Article III has three requirements: "(1) an injury in fact that is actual and imminent, not 'conjectural' or 'hypothetical'; (2) a causal connection between the injury and the conduct complained of—the injury must be fairly traceable to the challenged conduct of the defendant; and (3) a showing that it is likely, as opposed to merely speculative, that a favorable decision will redress the injury."  McBride v. Cahoone, 820 F. Supp. 2d 623, 633 (E.D. Pa. 2011) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992)).

Plaintiff has failed to plead facts that establish he is substantially likely to suffer an excessive use of force injury after fleeing from police officers in the future.  See Blakeney v. Marsico, 340 Fed. Appx. 778, 780 (3d Cir. 2009) (dismissing claim for declaratory relief where

plaintiff did not allege he would be subject to constitutional violations in the future); see also City of Los Angeles v. Lyons, 461 U.S. 95 (1983). "While a § 1983 plaintiff's allegation that he has suffered from unconstitutional practices may be sufficient to establish standing to sue for damages, '[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief[.]'" Brown v. Fauver, 819 F.2d 395, 400 (3d Cir. 1987) (quoting O'Shea v. Littleton, 414 U.S. 488, 495 (1974)). Furthermore, the declaratory and injunctive relief sought by Plaintiff essentially demands that this Court order Defendants to follow the law, which courts have historically declined to entertain. Sixth Angel Shepherd Rescue, Inc. v. West, 477 Fed. Appx. 903, 909 (3d Cir. 2012). Accordingly, Plaintiff's claims for declaratory and injunctive relief will be dismissed.

### C. Motion to Strike

Officers Selimis and Albertoli and the Borough of Lansdowne also move to strike Plaintiff's amended complaint pursuant to Federal Rule of Civil Procedure 12(f), which provides that "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." District courts maintain considerable discretion in determining whether to grant a motion to strike. J&J Sports Prods., Inc. v. Gonzalez, 2013 WL 6022225, at *2 (E.D. Pa. Nov. 14, 2013).

These Defendants specifically refer to two paragraphs in the amended complaint that they assert contain outrageous language: (1) in paragraph 52, the Defendant Officers are referred to as "lying and corrupt police officers"; and (2) in paragraph 51, it is alleged that the Defendant Officers appeared in court, "in part, motivated by their greed to collect overtime and racist desires to convict an African-American man they knew was innocent of the charges." While we decline to strike Plaintiff's entire amended complaint under Rule 12(f), we agree with

Defendants that the quoted language from Paragraph 51 in particular "casts the [D]efendants in a cruelly derogatory light" and does not add anything of substance to Plaintiff's claims.  See Collura v. City of Philadelphia, 2012 WL 6645532, at *8 (E.D. Pa. Dec. 21, 2012) (quotation marks and citation omitted) (dismissing complaint pursuant to Rule 12(f) when complaint was riddled with offensive language).  Therefore, the language quoted above from paragraph 51 of the amended complaint will be stricken.

### III.    CONCLUSION[21]

For the reasons stated above, Defendants' motions to dismiss will be granted in part and denied in part.  All claims under the Fourth Amendment with the exception of the claims against all Defendants for excessive use of force are dismissed under Count I.  Counts II, IV, VI, VIII, IX and X are dismissed in their entirety.  Count VII is dismissed only with regard to the Defendant Boroughs.  All claims against the Defendant Officers in their official capacities are dismissed.  Plaintiff's requests for declaratory and injunctive relief are dismissed, and finally, the

---

[21] We note that Plaintiff spent a significant number of pages in his responses discussing Title VI of the Civil Rights Act of 1964 and the Eleventh Amendment.  The Court is puzzled by the time spent on this analysis, as at no point in time has any Defendant argued that it was protected by sovereign immunity under the Eleventh Amendment, and at no point in his amended complaint did Plaintiff bring a claim under Title VI.  This discussion of seemingly irrelevant case law, along with offensive, unnecessary rhetoric regarding the Defendant Officers and defense counsel's legal abilities contributed to each of Plaintiff's briefs being approximately fifty pages in length.  (See, e.g., Pl.'s Resp. to East Lansdowne, p. 2 ("[Plaintiff] still retained his constitutional rights not be [sic] brutally and violently beaten by a gang of thugs in uniforms with badges and Taser guns masquerading as police officers."); Pl.'s Resp. to McGrenera & Hartnett, p. 1 n.1 ("Plaintiffs' lawyers [ ] must repeatedly respond to frivolous motions to dismiss filed by Defendants abusing taxpayer dollars").)

Moving forward, we urge counsel to advocate on behalf of their clients in a respectful, professional manner, as required by the Federal Rules of Civil Procedure and Rules of Professional Conduct.  We also remind Plaintiff's counsel that the undersigned's Policies and Procedures, found at http://www.paed.uscourts.gov/documents/procedures/gldpol.pdf, place a twenty-five page limit on any legal brief or memorandum.  Throughout the remainder of this case, Plaintiff's counsel must seek leave of Court prior to submitting a brief exceeding twenty-five pages or the Court will reject the brief as noncompliant.

phrase "in part, motivated by their greed to collect overtime and racist desires to convict an African-American man they knew was innocent of the charges" is stricken from the amended complaint.   The claims remaining following this ruling are an excessive use of force claim in Count I against all Defendants; <u>Monell</u> claims for failure to train under Count III against the Defendant Boroughs; assault and battery claims against Officers McGrenera and Burns under Count V; and intentional infliction of emotional distress claims against the Defendant Officers under Count VII.

Our Order follows.